UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SHARRIFF DYER, an individual,<br><br>　　　Plaintiff,<br><br>v.<br><br>VILLAGE CAPITAL & INVESTMENT LLC, a Delaware limited liability company; DOVENMUEHLE MORTGAGE, INC., a Delaware corporation; EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation; EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company; and TRANS UNION LLC, a Delaware limited liability company,<br><br>　　　Defendants. | Case No.<br><br>Hon. |

## COMPLAINT AND JURY DEMAND

Plaintiff Sharriff Dyer, for his Complaint against Defendants Village Capital & Investment LLC; Dovenmuehle Mortgage, Inc.; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC, states as follows:

### INTRODUCTION

1. In response to the unprecedented economic impacts of the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act on March 25, 2020.

2. The CARES Act, which was signed into law on March 27, 2020, provided several types of relief for consumers who faced financial hardships due to the pandemic, including

requiring servicers of federally backed home mortgage loans to provide loan forbearance and/or modifications at specified interest rates to affected consumers and prohibiting punitive credit reporting regarding the accounts of consumers who availed themselves of mortgage loan forbearance and/or modification under the Act.

3. Contrary to the CARES Act, the federal consumer protection statutes it modifies, including the Fair Credit Reporting Act ("FCRA"), and the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), Defendants Doevenmuehle Mortgage, Inc. ("DMI") and Village Capital & Investment LLC ("Village") failed to implement a mortgage loan modification requested by Plaintiff and offered by DMI and Village, unlawfully reported to consumer credit reporting agencies that Plaintiff's mortgage loan account was increasingly delinquent, and failed to correct reported credit information as required by law after Plaintiff's dispute of the unlawfully reported negative credit information.

4. Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") failed to follow reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer credit reports, failed to follow the requirements of the CARES Act by publishing negative credit information about Plaintiff in connection with the DMI mortgage loan account, and failed to conduct a reasonable reinvestigation of Plaintiff's account in response to his disputes.

5. Because of Defendants' inaccurate and unlawful publication of negative credit information, Plaintiff has been unable to gain admission to the Michigan State Bar on "character and fitness" grounds and has suffered substantial actual damages in the form of lost employment prospects.

6. Further, because DMI refused to acknowledge the modification Plaintiff requested, DMI offered, and Plaintiff accepted in October of 2021, Plaintiff has suffered actual damages in the form of increased payments and an increased interest rate on his mortgage loan.

## THE PARTIES

7. Plaintiff Sharriff Dyer is an individual residing in Canton, Wayne County, Michigan. Plaintiff is a "consumer" as that term is defined and used in the FDCPA, TILA, RESPA, and the MRCPA.

8. Defendant Village Capital & Investment LLC ("Village") is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Henderson, Nevada.

9. Village is licensed as a mortgage loan servicer in the State of Michigan, holding license number FR-0021045, and is a "licensee" as that term is defined and used in the MBLSLA.

10. Village is an originator and servicer of federally backed residential mortgage loans and is regulated by the U.S. Department of Housing and Urban Development.

11. Defendant Dovenmuehle Mortgage, Inc. ("DMI") is a corporation organized under the laws of the State of Delaware with a principal place of business in Zurich, Illinois.

12. DMI is licensed as a mortgage loan servicer in the State of Michigan, holding license numbers SR-0018087 and FR-0019358, and is a "licensee" as that term is defined and used in the MBLSLA.

13. DMI is a servicer of federally backed residential mortgage loans and is regulated by the U.S. Department of Housing and Urban Development.

14. DMI is a "regulated person" as that term is defined in the Michigan Regulation of Collection Practices Act ("MRCPA"), Mich. Comp. Laws § 445.251(g), because DMI collects consumer debts.

15. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized under the laws of the State of Ohio with a principal place of business in Costa Mesa, California.

16. Experian is a "consumer reporting agency" as defined in the FCRA, 15 U.S.C. § 1681a(f).

17. Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company organized under the laws of the State of Georgia with a principal place of business in Atlanta, Georgia.

18. Equifax is a "consumer reporting agency" as defined in the FCRA, 15 U.S.C. § 1681a(f).

19. Defendant Trans Union LLC ("Trans Union") is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Chicago, Illinois.

20. Trans Union is a "consumer reporting agency" as defined in the FCRA, 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

21. This Court has federal-question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 15 U.S.C. §§ 1681n and 1681o, and 12 U.S.C. § 2605. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

4

22. Venue is appropriate in this Court because the conduct complained of took place within this District.

## FACTUAL ALLEGATIONS

23. Plaintiff and his wife, Kristele Dyer, purchased the home located at 47102 Glenhurst Drive, Canton, Michigan 48187 (the "Property") in August of 2015.

24. The Property has been Plaintiff's primary residence since Plaintiff became its owner.

25. Plaintiff obtained a mortgage loan from Summit Funding Inc. ("Summit") to finance the purchase of the Property and granted Summit a mortgage as security.

26. In September of 2016, Plaintiff refinanced the Summit loan by obtaining a loan from Village (the "Loan"), which repaid the loan to Summit and resulted in a discharge of the mortgage in favor of Summit. Plaintiff granted Village a mortgage to secure the refinance indebtedness.

27. Plaintiff sought and obtained the Loan for personal and not commercial purposes.

28. The Loan was FHA insured, bearing FHA Case Number 264-2400444-703.

29. Village was a "lender" as that term is defined in RESPA because it was regulated by the U.S. Department of Housing and Urban Development. The Loan was a "federally related mortgage loan" as that term is defined and used in RESPA, 12 U.S.C. § 2605.

30. DMI acted as Village's servicing agent with respect to the Loan.

31. On March 27, 2020, the CARES Act was signed into law.

32. As of March of 2020, Plaintiff's payments under the Loan were up-to-date and Plaintiff's credit score exceeded 750.

5

33. Plaintiff experienced a reduction in household income due to the COVID-19 pandemic, in part due to the closing of Plaintiff's office and the need to provide childcare for his children, whose school closed for an extended period, and requested a forbearance on the Loan under the CARES Act.

34. On April 7, 2020, DMI and Village provided Plaintiff an accommodation under the CARES Act in the form of a forbearance suspending payments on the Loan. This accommodation triggered the credit protections contained in Section 4021 of the Act.

35. CARES Act Section 4021, incorporated into the FCRA at 15 U.S.C. § 1681s-2(a)(F), prohibited DMI and Village from reporting the Loan account as anything other than current, because the Loan was current in March of 2020.

36. DMI, acting on behalf of Village, reported to Experian, Equifax, and Trans Union that Plaintiff's Loan account was increasingly delinquent.

37. DMI's repeated reporting of negative credit information about the Loan account during the period from March of 2020 to present violated the CARES Act and FCRA, caused Plaintiff to suffer actual damages including lost employment opportunities, and entitles Plaintiff to the remedies provided in the MBLSLA, Mich. Comp. Laws §§ 445.1672, 445.1681.

38. FHA guidelines in place in October of 2021 required that servicers of FHA-insured loans such as the Loan evaluate borrowers who were in COVID-related forbearance for permanent loan modifications and other relief.

39. In October of 2021, during the forbearance period, DMI reviewed Plaintiff's Loan account for a permanent loan modification. DMI approved Plaintiff and his wife for a modification of the Loan at the then-current FHA interest rate of 3.0%.

6

40. DMI mailed a loan modification agreement to Plaintiff and his wife that reflected an interest rate of 3.0% on or about October 11, 2021.

41. Plaintiff and his wife executed the loan modification agreement sent to them by DMI ("LMA") and timely returned the executed LMA to DMI.

42. On November 10, 2021, DMI emailed Plaintiff to advise him that he and his wife had been approved for the permanent modification of the Loan.

43. DMI subsequently refused to honor the executed LMA.

44. On or about November 22, 2021, Plaintiff received a second loan modification agreement package, which DMI instructed Plaintiff and his wife to sign and return to DMI. This "corrected" loan modification agreement reflected an interest rate of 3.25%.

45. With the second loan modification agreement package, DMI included a purported explanation for the new documents, alleging that the LMA had specified the wrong lender and was invalid.

46. In other words, DMI claimed that because it had made an error in drafting the LMA consisting solely of naming the wrong lender, the LMA was not and would not be signed or acknowledged by DMI and new modification documentation was needed.

47. Plaintiff contacted DMI to request that any "corrected" loan modification agreement reflect the correct rate specified in the LMA, i.e., 3.0%. DMI refused this request.

48. Upon information and belief, DMI's intent in refusing the honor the LMA was to delay modification of the loan until FHA interest rates increased, thus requiring Plaintiff and his wife to submit larger payments and to repay a greater total amount under the Loan.

49. DMI subsequently began demanding payments exceeding the amounts specified in the LMA.

50. On several occasions since 2021, Plaintiff has mailed and emailed DMI requests for loan servicing information regarding the Loan, the LMA, and other proposed modification agreements.

51. Plaintiff's requests for servicing information were sent to DMI at its specified addresses for receipt of qualified written requests, requests for information, and notices of error.

52. On each occasion, DMI failed to provide Plaintiff with requested servicing information regarding the Loan.

53. Notwithstanding the requirements of the CARES Act and Plaintiff's submission of payments, DMI continued to report Plaintiff as delinquent on the loan, including by 30, 60, 90, and over 90 days, to Experian, Equifax, and Trans Union.

54. Plaintiff disputed DMI's reporting of his loan as delinquent on several occasions before May 9, 2023.

55. On May 9, 2023, Plaintiff mailed to Experian, Equifax, and Trans Union dispute letters that identified Plaintiff, identified the Village tradeline regarding the Loan that appeared in his consumer credit reports, and disputed the accuracy of that tradeline's delinquency history, payment amount, and balance.

56. Plaintiff's dispute letters triggered obligations by Experian, Equifax, and Trans Union (the "CRA Defendants") to conduct "reasonable reinvestigation[s] to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(1).

57. The CRA Defendants initiated reinvestigations by notifying DMI of the dispute and requesting verification of the information submitted by DMI to them.

58. In response to notice from the CRA Defendants,, DMI "verified" the purported accuracy of the information it had furnished to the CRA Defendants and noted that the Loan had been affected by a natural disaster, i.e., the COVID-19 pandemic.

59. The CRA Defendants failed to modify the Village tradeline in Plaintiff's credit file in response to his May 9, 2023 dispute letters other than to place a note in the tradeline that the Loan was affected by a natural disaster.

60. The modification of Plaintiff's credit files by the CRA Defendants did not remedy any of the damage to Plaintiff's credit occasioned by the inclusion of substantial delinquency in the Village tradelines.

61. Neither the CARES Act nor the FCRA authorizes placing "natural disaster" or related notations in tradelines in lieu of maintaining reporting of the "credit obligation or account as current."

62. The CRA Defendants were aware of the modifications the CARES Act made to the FCRA and could not reasonably rely on information provided by DMI regarding the purported natural disaster and delinquency of payments in their reinvestigations.

63. DMI submitted inaccurate information to the CRA Defendants, both initially and in response to the reinvestigations initiated by the CRA Defendants in response to Plaintiff's dispute letters.

64. DMI's unlawful reporting of delinquencies in the Village Loan account, and the CRAs' failure to reasonably reinvestigate in response to Plaintiff's dispute letters, caused Plaintiff to suffer actual harm, including damage to his reputation for creditworthiness and an inability to obtain credit on reasonably favorable terms.

65. Although Plaintiff otherwise could sit for the Michigan State Bar Exam and be qualified to practice law in the State of Michigan, DMI's and Village's unlawful conduct as alleged herein has directly affected Plaintiff's ability to clear the Michigan State Bar's character and fitness requirements to sit for the exam, causing substantial actual damage in the form of lost employment opportunities.

### COUNT I – FCRA, 15 U.S.C. §§ 1681o, 1681n

### CRA Defendants and DMI

66. The foregoing paragraphs are incorporated by reference.

67. The CRA Defendants violated the FCRA, 15 U.S.C. § 1681i(a), by failing to conduct a reasonable reinvestigation following Plaintiff's dispute of the Village tradeline and by including notations that the Loan account was affected by the COVID-19 pandemic following their reinvestigations.

68. The CRA Defendants had actual knowledge of the furnisher reporting requirements of the CARES Act and 15 U.S.C. § 1681s-2(a)(1)(F) and had actual knowledge that the disputed Loan tradeline related to an FHA mortgage loan.

69. The CRA Defendants' violations of the FCRA were willful.

70. DMI violated the FCRA, 15 U.S.C. § 1682s-2(b), by failing to modify or delete the prohibited credit reporting disputed by Plaintiff in response to the CRA Defendants' reinvestigation notices.

71. DMI's violations of the FCRA were willful.

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment in his favor and against the CRA Defendants and DMI, providing the following relief:

a. Actual damages in an amount to be determined at trial;

    b. Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    c. Such punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2) or 15 U.S.C. § 1681o(a)(1); and

    d. Reasonable attorney fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2).

### COUNT II – MBLSLA, Mich. Comp. Laws § 445.1681

### Defendants DMI and Village

72. The preceding paragraphs are incorporated by reference.

73. The MBLSLA provides a cause of action and remedies to consumers harmed by lenders and servicers who "fail to conduct the business in accordance with law" by violating federal or state statutes. Mich. Comp. Laws §§ 445.1672(a), 445.1681.

74. DMI acted as servicing agent for Village at all relevant times and its actions in connection with servicing Plaintiff's Loan are imputed to Village.

75. DMI violated the FCRA, 15 U.S.C. § 1681s-2(a)(1)(F), by repeatedly reporting delinquencies regarding the Loan to the CRA Defendants when the Loan had been current as of March of 2020.

76. DMI violated the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A), by furnishing information to the CRA Defendants regarding the Loan that DMI knew or had reasonable cause to believe was inaccurate.

77. DMI violated the FCRA, 15 U.S.C. § 1682s-2(a)(1)(B), by furnishing inaccurate credit information regarding the Loan to the CRA Defendants after Plaintiff notified DMI that the information was inaccurate.

78.     DMI violated the FCRA, 15 U.S.C. § 1682s-2(b), by failing to modify or delete the negative and inaccurate credit reporting disputed by Plaintiff in response to the CRA Defendants' reinvestigation notices.

79.     DMI's violations of the FCRA, acting on behalf of Village, entitle Plaintiff to the remedies in Mich. Comp. Laws § 1681, including actual damages, statutory damages, and attorney fees.

80.     The MBLSLA prohibits mortgage lenders and servicers from engaging in "fraud, deceit, or material misrepresentation in connection with any transaction governed by this act." Mich. Comp. Laws § 445.1672(b).

81.     DMI, acting on behalf of Village, violated the MBLSA by materially misrepresenting to Plaintiff the terms, applicability, and enforceability of the LMA.

82.     The MBLSLA prohibits mortgage lenders and servicers from failing "to make a mortgage loan in accordance with a written commitment to make a mortgage loan issued to, and accepted by, a person when the person has timely and completely satisfied all the conditions of the commitment before the expiration of the commitment." Mich. Comp. Laws § 445.1672(k).

83.     DMI, acting on behalf of Village, violated the MBLSLA by failing to implement the LMA or a modification on substantially similar terms to the LMA, including its 3.0% interest rate.

84.     The Equal Credit Opportunity Act ("ECOA") requires creditors to provide, within 30 days of an adverse action or decision on an application for credit, a written statement of the reasons for the adverse action or notification of the applicant's right to a statement of reasons for the adverse action. 15 U.S.C. § 1691(d).

85. Plaintiff's request for a loan modification in October of 2021 was a request for "credit" as that term is defined in the ECOA, 15 U.S.C. § 1691a(d).

86. Village took "adverse action" with respect to Plaintiff's request for a loan modification because it refused to grant on substantially the terms requested. 15 U.S.C. § 1691(d)(6).

87. Village did not supply Plaintiff with a written statement of the reasons for the adverse action or notification of the applicant's right to a statement of reasons for the adverse action.

88. Village violated the ECOA.

89. Village's violations of the ECOA entitle Plaintiff to the remedies in Mich. Comp. Laws § 1681, including actual damages, statutory damages, and attorney fees.

90. DMI's and Village's violations of the MBLSLA were willful, intentional, or the result of gross or wanton negligence.

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment in his favor and against DMI and Village, jointly and severally, providing the following relief:

a. Actual damages in an amount to be determined at trial;

b. Declaring that DMI and Village violated the MBLSL pursuant to Mich. Comp. Laws § 445.1681(1)(a);

c. Statutory damages pursuant to Mich. Comp. Laws § 445.1681(1)(c);

d. Reasonable attorney fees pursuant to Mich. Comp. Laws § 445.1681(1)(c); and

e. Such further legal and equitable relief as the Court deems just.

## COUNT III – RESPA, 12 U.S.C. § 2605

### Defendant DMI

91. The preceding paragraphs are incorporated by reference.

92. RESPA requires that, in response to a request for information, a mortgage loan servicer must provide the requested servicing information to the debtor or notify the debtor that the requested information is unavailable after a reasonable investigation. 12 C.F.R. § 1024.36(d); 12 U.S.C. § 2605(k)(1)(E).

93. DMI failed to respond to Plaintiff's requests for servicing information by producing the requested information or notifying Plaintiff that the requested information was unavailable after a reasonable investigation.

94. DMI violated RESPA and Regulation X.

95. DMI's failure to produce the requested information deprived Plaintiff of information to which he was legally entitled and prevented Plaintiff from asserting his legal rights.

96. DMI's violations of RESPA prejudiced Plaintiff's right to enforce compliance with the LMA, contributed to confusion, and caused Plaintiff to suffer mental stress and emotional distress.

WHEREFORE, Plaintiff respectfully requests that judgment enter against Defendant DMI specifying the following relief:

    a. Actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A);

    b. Additional damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

    c. Statutory costs and reasonable attorney fees pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT V – MRCPA, M.C.L. § 445.257

## DMI

97. Plaintiff incorporates by reference the preceding paragraphs.

98. It is unlawful for a "regulated person" to make an "inaccurate, untrue, or deceptive statement or claim in a communication to collect a debt." M.C.L. § 445.252(e).

99. It is unlawful for a "regulated person" to misrepresent in a communication with a debtor the legal status of an action being taken or threatened, the legal rights of the creditor or debtor, or that the nonpayment of a debt will result in the attachment or sale of the debtor's property. M.C.L. § 445.252(f).

100. The MRCPA provides a remedy to any "person who suffers injury, loss, or damage" a result of the "use of a method, act, or practice in violation of this act." M.C.L. § 445.257.

101. DMI violated the MRCPA.

102. DMI's violations of the MRCPA were willful.

103. Defendants' violations of the MRCPA proximately caused Plaintiff injury, harm, and loss, including noneconomic loss in the form of substantial mental stress, emotional distress, and suffering.

WHEREFORE, Plaintiff requests that judgment be granted in his favor against DMI, specifying the following relief:

a. An award of actual damages under Mich. Comp. Laws § 445.257(2);

b. An award of 3 times the amount of actual damages under Mich. Comp. Laws § 445.257(2);

c. An award of costs and reasonable attorney fees as required by Mich. Comp. Laws § 445.257(2); and

15

    d. Any and all equitable relief as the court deems just under Mich. Comp. Laws § 445.257(1).

Respectfully submitted,

Dated:  October 28, 2024

/s/ Theodore J. Westbrook
Theodore J. Westbrook
**Westbrook Law PLLC**
Attorney for Plaintiff
Centennial Plaza, Suite 205
2851 Charlevoix Dr. SE
Grand Rapids, MI 49546
(616) 288-9548
ted@westbrook.law

## JURY DEMAND

Plaintiff Sharriff Dyer, by and through his counsel, hereby demands a trial by jury as to all claims and issues so triable.

Respectfully submitted,

Dated: October 28, 2024

/s/ Theodore J. Westbrook
Theodore J. Westbrook
**Westbrook Law PLLC**
Attorney for Plaintiff
Centennial Plaza, Suite 205
2851 Charlevoix Dr. SE
Grand Rapids, MI 49546
(616) 288-9548
ted@westbrook.law